Nos. 17-1055 (L) and 17-1123

**IN THE UNITED STATE COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

RAINBOW SCHOOL, INC.,

*Plaintiff-Appellee,*

v.

RAINBOW EARLY EDUCATION HOLDING, LLC and
REE SOUTHEAST, INC.,

*Defendants-Appellants.*

On appeal from the United States District Court
for the Eastern District of North Carolina

**RESPONSE BRIEF FOR APPELLEE**

Susan Freya Olive
David L. McKenzie
**OLIVE & OLIVE, P.A.**
*Attorneys for Plaintiff-Appellee*
P.O. Box 2049
Durham, NC  27702
Telephone:  (919) 683-5514
Facsimile:  (919) 688-3781
emailboxednc@oliveandolive

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __17-1055__        Caption: __Rainbow School, Inc. v Rainbow Early Educ. Holding, LLC et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Rainbow School, Inc.__
(name of party/amicus)

_____

who is _____Plaintiff-Appellee_____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

09/29/2016 SCC                           - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Susan Freya Olive                    Date:    1/27/2017

Counsel for: Plaintiff-Appellee

## CERTIFICATE OF SERVICE
***************************

I certify that on _____ 1/27/2017 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Susan Freya Olive                              1/27/2017
      (signature)                                    (date)

- 2 -

# Table of Contents

Table of Authorities ......................................................................................v

Introduction ..................................................................................................1

Statement of Jurisdiction: Absence of Appellate Jurisdiction as to 17-1123 .....2

Statement of the Issues ................................................................................3

Statement of the Case ..................................................................................4

    A.    The underlying lawsuit .................................................................4

    B.    Resolution of the underlying lawsuit: settlement agreement and the district court's consent judgment and injunction ............................5

    C.    First motion to hold defendants in contempt of court ......................7

    D.    Second motion to hold defendants in contempt of court .................9

    E.    Contempt judgment as to plaintiff's first and second motions .......11

    F.    Third motion to hold defendants in contempt of court ..................13

    G.    Hearing on third motion for contempt ...........................................16

    H.    District court's guidance, during hearing, as to purging contempt; defendants' expression of satisfaction with guidance ...................17

    I.    District court's interim order on third motion, requiring audit and report from auditor before reaching decision and entering judgment .......................................................................................17

    J.    Joint motion to amend interim order, absence of motion for other alterations in order, and district court's order granting motion to amend ..........................................................................................18

    K.    Notices of appeal filed, cases consolidated for appeal ..................19

i

L.    Subsequent proceedings, to date of briefing....................................19

**Summary of Argument**............................................................................**20**

**Argument** ............................................................................................**22**

I.    Judgments in civil contempt proceedings, including the rulings, sanctions, and attorneys' fees, are reviewed for abuse of discretion ............................22

II.    The district court properly held defendants in contempt of court as sought in plaintiff's first and second motions (case 17-1055) ......................................23

A.    To establish civil contempt, four factors must be shown ..............23

B.    Existence of a valid decree known to defendants, and that the decree was in plaintiff's favor were not, and cannot be, contested ........................................................................................24

C.    Clear and convincing evidence showed defendants' awareness of their violations, and defendants have waived any right to argue otherwise ........................................................................................25

D.    Clear and convincing evidence in support of each motion showed that, as to each, defendants by their conduct had violated the terms of the injunction ...........................................................................28

1.    Plaintiff's evidence in support of the first motion was uncontested, and clearly and convincingly showed violations of the court's order; any objections to consideration of any of it were waived..................................................................28

2.    The evidence presented in support of the second motion clearly and convincingly showed violations by defendants of the court's order ...................................................................29

E.    The district court's finding of harm is supported by clear and convincing evidence.......................................................................32

F.    The district court did not abuse its discretion in holding defendants in contempt of court with respect to either the first or second of plaintiff's motions seeking such relief...........................................36

ii

III.   The district court did not abuse its discretion as to the amount of damages and attorneys' fees awarded to plaintiff as part of its judgment of contempt (case 17-1055) ............................................................................37

    A.   The district court did not abuse its discretion in awarding, for each of the first two motions, $30,000 as a compensatory penalty for defendants' contempt ....................................................................37

    B.   The district court did not err in awarding to plaintiff attorneys' fees for each motion, or in the amount of those fees ...........................38

IV.   Appeal is not well-taken from the district court's interim order with respect to plaintiff's third motion for contempt (case 17-1123) ................................39

    A.   The appeal in case 17-1123 is not taken from a final judgment.....40

    B.   No exception authorizes the appeal .................................................41

        1.   There is no statutory exception...........................................41

        2.   The collateral order doctrine does not apply ......................42

        3.   There is no proper basis for the exercise of pendent appellate jurisdiction ...........................................................................43

        4.   This is not a criminal contempt proceeding and would not now be appealable even if it were criminal in nature ..........45

    C.   Defendants' consent to an amended interim order, with provisions equivalent to those now attacked and which replaces the order now attacked, bars the present appeal from the original order ..............46

V.   The district court's interim order with respect to plaintiff's third motion for contempt was not an abuse of the court's discretion and should not be reversed (case 17-1123).................................................................................49

    A.   Appointment of experts is authorized both by rule and under the court's inherent authority ..............................................................49

    B.   The district court's exercise of its authority here is appropriate and not an abuse of discretion...............................................................50

C.    Defendants have not preserved any objection to the imposition of the cost of audit, but the court's order regarding the cost of audit is not erroneous in any event ...........................................................52

VI.    If relevant at all, defendants' suggestion that they have not been offered a chance to purge themselves from contempt is wrong; they were told how to purge their contempt, said they understood, and then failed either to take the requisite steps or to move the district court for relief....................................53

VII.    Appropriate relief on this appeal ....................................................................55

A.    Case 17-1055 should be affirmed and remanded for determination of further attorneys' fee award........................................................55

B.    Case 17-1123 should be dismissed or affirmed, and remanded in either event ................................................................................55

**Conclusion**..................................................................................................................**56**

**Certificate of Compliance**......................................................................................**57**

iv

# Table of Authorities

## <u>Cases</u>

*Abney v. United States*,
   431 U.S. 651 (1977)....................................................................................43

*Allied Towing Corp. v. Tatem*,
   580 F.2d 702 (4th Cir. 1978)..................................................................3, 40

*Anderson v. Bessemer City*,
   470 U.S. 564 (1985)....................................................................................24

*Bethesda Softworks, LLC v Interplay Ent. Corp.*,
   452 F. App'x 351 (4th Cir. 2011). .............................................................34

*Chambers v NASCO, Inc.*,
   501 U.S. 32 (1991)......................................................................................22

*Colonial Williamsburg Found. v. Kittinger Co.*,
   38 F.3d 133 (4th Cir. 1994)................................................... 22, 23, 37, 55

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)....................................................................................49

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
   511 U.S. 863 (1994)............................................................................. 42, 43

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)............................................................................. 34, 35

*Erline Co.v. Johnson*,
   448 F.3d 648 (4th Cir. 2006).....................................................................52

*Guiness PLC v. Ward*,
   955 F.2d 875 (4th Cir. 1992).....................................................................48

*Holland v. Big River Minerals Corp.*,
   181 F.3d 597 (4th Cir. 1999).....................................................................27

*JTH Tax, Inc. v H & R Block E. Tax Servs., Inc.*
    359 F.3d 699 (4th Cir. 2004)......................................................... 22, 23

*Kennedy v. Block*,
    784 F.2d 1220 (4th Cir. 1986) ..........................................................48

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,*
    43 F.3d 922 (4th Cir. 1995)..............................................................34

*Nye v. United States*,
    313 U.S. 33 (1941) ................................................................... 45, 46

*Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.,*
    799 F. Supp. 2d 558 (M.D.N.C. 2011) ...............................................35

*Scott v. Family Dollar Stores*,
    733 F.3d 105 (4th Cir. 2013).................................................. 43, 44, 45

*Scotts Co. v. Scotts United Indus. Corp.*,
    315 F.3d 264 (4th Cir. 2002)............................................................34

*Swint v. Chambers County Commission*,
    514 U.S. 35 (1995).........................................................................43

*United States v. O'Rourke*,
    943 F.2d 180 (2d Cir. 1991).................................................. 40, 41, 42

**<u>Constitution</u>**

U.S. Const. art. III, § 2 ....................................................................48

**<u>Statutes</u>**

28 U.S.C. § 1291 .................................................................. 2, 40, 42

28 U.S.C. § 1292(a)(1)...........................................................2, 41

**Rules**

Fed. R. App. P. 28(a)(9)(A) ......................................................................52

Fed. R. App. P. 4(a) ............................................................................ 47, 48

Fed. R. Civ. P. 52(b). ..............................................................................47

Fed. R. Civ. P. 54 .............................................................................. 2, 40, 42

Fed. R. Evid. 706 ............................................................................... 49, 53

**Other Authorities**

Joe S. Cecil and Thomas E. Willging, *Court-Appointed Experts, in* REFERENCE
  MANUAL ON SCIENTIFIC EVIDENCE 527-573, Federal Judicial Center (1994) .....49

# Introduction

Defendants seek to nullify the effects of an injunction entered against them in a trademark lawsuit—an injunction to which defendants themselves had agreed—by challenging the district court's enforcement authority and contempt decisions.

The underlying lawsuit was brought by a small child care center in Fayetteville, North Carolina that had used the name "Rainbow" and a rainbow logo to identify itself for over 25 years. Its owner sued a large conglomerate that opened and began operating a nearby "Rainbow" child care center, causing confusion in the local market. The district court entered a preliminary injunction and ultimately, after lengthy litigation, entered the consented-to injunction that gives rise to the present appeals.

In case 17-1055, defendants appeal from a final judgment holding them in repeated willful contempt of the original consent injunction. The appealed-from judgment combined rulings on two successive contempt motions that had been brought by plaintiff. Defendants did not even present evidence in response to the first motion, although they now seek to overturn the result; and on the second, voluminous evidence of record contradicted the single affidavit presented by defendants' employee.

In case 17-1123, defendants appeal from an **interlocutory** order. The appeal involves a third motion, seeking to hold defendants in further contempt, that

is presently pending before the district court. Evidence of continued and additional non-compliance was presented to the court. In response, defendants raised a new argument: that compliance with the injunction is impossible, and also asserted they have done all that they can do. The district court has ordered that an audit of defendants' activities be conducted to determine the nature and extent of any continuing infringements and to test the veracity of their new argument that compliance is impossible. It also ordered that the cost of the audit be at least initially borne by defendants. Defendants seek to prevent this audit.

# Statement of Jurisdiction:
# Absence of Appellate Jurisdiction as to 17-1123

Plaintiff does not disagree that both the district court and this Court have subject matter jurisdiction, and that appellate jurisdiction exists over case 17-1055 because it arises from a final judgment of the district court. 28 U.S.C. § 1291.

In case 17-1123, however, appellate jurisdiction does not exist. This is an appeal from an interlocutory order of the district court that does not finally dispose of any issue. The order is not a final judgment under Fed. R. Civ. P. 58, nor a partial final judgment under Fed. R. Civ. P. 54, and is not appealable under 28 U.S.C. § 1291. No exception authorizes the appeal—either statutory or judicial. For example, this is not an appeal from an interlocutory order granting an injunction, appealable under 28 U.S.C. § 1292(a)(1) because the injunction at issue was entered by consent and the judgment was not appealed; the present

2

proceedings are contempt proceedings that merely enforce the original injunction. Appeals from interlocutory orders are properly taken as part of the ultimate appeal from the ultimate final judgment. *Allied Towing Corp. v. Tatem*, 580 F.2d 702, 704 (4th Cir. 1978) .

Further support is set out in Argument Sec. IV below.

# Statement of the Issues

**(Case 17-1055 - appeal from final judgment)**

I.      Whether the district court abused its discretion in holding defendants in contempt of court.

II.     Whether the district court abused its discretion as to the amount of damages and attorneys' fees awarded to plaintiff.

**(Case 17-1623 - interlocutory appeal)**

III.    Whether this interlocutory appeal from an interim order of the district court is properly before this court.

IV.     Whether, if appeal is proper, the district court abused its discretion by entering its interim order, and requiring that an audit be conducted of defendants' ongoing activities before the district court reaches a decision as to the merits of a third motion to hold defendants in contempt of court, allocating the cost of the audit, and not releasing defendants from the earlier holdings of contempt.

# Statement of the Case

Defendants, in two separate appeals, seek relief from:

- a final judgment of the district court holding them in contempt of court on each of two motions filed by plaintiff (case 17-1055); and

- an interlocutory order requiring that an audit be conducted of their ongoing activities before the district court reaches a decision as to the merits of a third motion filed by plaintiff (case 17-1123).

## A.     The underlying lawsuit

The trademark lawsuit that underlies both appeals commenced in 2014 (J.A. 3 [1]). Debra Rickstrom, sole owner of a child care center that had operated for over two decades under the name "Rainbow" and a rainbow logo, discovered that a large conglomerate proposed to open a nearby child care center, also using a "Rainbow" name and logo. Am. Compl. ¶¶ 1, 3, 8 at J.A. 22-24. Significant confusion resulted. Am. Compl. ¶¶ 33-34 at J.A. 30-31. Plaintiff notified defendants of the conflict. When they failed to change their name or take steps to mitigate the harm but instead moved forward with plans to open, plaintiff filed suit. Am. Compl. ¶¶ 35-36 at J.A. 32. After defendants opened their "Rainbow" child care center, the district court issued a preliminary injunction forbidding their use of

---

[1] The Joint Appendix ( "J.A. ") was filed in two volumes, numbered consecutively at the foot of each page. The page references herein are to those numbers (not to CM/ECF pagination). Similarly, references to defendants' opening brief ("Br.") are to the numbers at the bottom of its pages.

that name, based upon findings that included the priority of plaintiff's rights, and confusion and harm that already had resulted from defendants' activities. J.A. 8, 72-74. The case then continued through extensive discovery. J.A. 8-10.

### B.    Resolution of the underlying lawsuit: settlement agreement and the district court's consent judgment and injunction

Ultimately the parties entered into a settlement agreement (J.A. 181–90). The district court then issued an order and consent judgment, confirming that the evidence of record would support judgment of trademark infringement as sought in the amended complaint, and permanently enjoining defendants' future infringements in the Fayetteville, North Carolina metropolitan area. J.A. 77-83. The order was entered with the knowledge and consent of defendants, whose chief executive signed it under oath. J.A. 83.

The district court's order was designed to prevent defendants from infringing plaintiff's rights in plaintiff's "rainbow" word and design marks. It unequivocally prohibited defendants from doing the following in plaintiff's territory:

- doing business as "Rainbow Child Care Center," J.A. 80, ¶ A;

- using the word "rainbow" in connection with the provision of child care services or other business of defendants, J.A. 80, ¶ B;

- using the web address/domain name *www.rainbowccc.com/fayetteville2* in connection with any business or services offering, J.A. 81, ¶ C;

5

- using any rainbow design on any website or domain identifying or advertising any child care services offered by them (with certain exceptions regarding use of Defendants' own corporate website serving its child care centers located elsewhere), J.A. 81, ¶ C; and

- using a rainbow design on any exterior signage, whether attached to a building or otherwise, J.A. 81, ¶ E.

There was no doubt that, to avoid further trademark infringement and public confusion, defendants were to avoid connecting themselves with the "Rainbow" name and a rainbow design in the Fayetteville marketplace. For example, to prevent suggesting that defendants owned or operated any "Rainbow" facility in the Fayetteville, North Carolina metropolitan area, the injunction required defendants to establish a new, standalone web page for their Fayetteville child care center and to route all links to *www.rainbowccc.com* through a forwarding page. No links or references were to connect defendants' main corporate website, serving its conglomerate of other child care centers (where a rainbow might appear), to the stand-alone web page for defendants' Fayetteville child care center. J.A. 80-81.

Defendants did not appeal from the consent judgment and injunction to which they had agreed. J.A. 10. Unfortunately, defendants also did not comply with the injunction.

6

### C.    First motion to hold defendants in contempt of court

Plaintiff brought a first motion (J.A. 84) to hold defendants in contempt of the district court's order, after giving defendants notice of their violations (J.A. 111–33) and waiting until it was clear the violations would not voluntarily be cured. Plaintiff provided the court with both affidavit and documentary exhibit evidence showing the violations. J.A. 104-79. Plaintiff also provided the court with a copy of the settlement agreement, in which defendants had agreed as to the harm that would be incurred as a result of "any violation" of the terms of the permanent injunction and the value, based on their respective years of experience in the child care industry, that they had mutually agreed any such violation would cause. J.A. 180-90, esp. ¶ 5 at 186-87.

Defendants did not provide any countervailing evidence whatsoever. Instead, defendants provided a two-page "response" in which their corporate counsel claimed alternatively—not under oath—that:

- defendants were not in contempt due to alleged violations of the district court's order;

- even if they were in violation of the district court's order, any "inadvertent omissions or errors" had been timely cured (the Settlement Agreement required cure within ten days of notice—J.A. 186) and caused no loss to plaintiff; and

- plaintiff was not entitled to an award of damages equal to the amount they had agreed for even one ("any") violation.

7

J.A. 208-09.

The only evidence of record showed that defendants' violations had continued long after the date when they received each notice. *See. e.g.,* J.A. 105-06 (Rickstrom Declaration) at ¶¶ 6, 8, 11-12, and the exhibit evidence that accompanied it at J.A. 134-72. Without recapitulating all of that here, the following are two examples, each of which the district court included in its ultimate findings (J.A. 622-24) as to the violations.

- Biographies of defendants' Fayetteville, NC child care center executive director and assistant director still were posted on defendants' *www.rainbowccc.com* website two months after defendants had been given notice that they were wrongfully posted. Each of those biographies included a rainbow design in direct association with the name of defendants' Fayetteville child care center. J.A. 112 at ¶ 2 and its encls. at 114-15 (notice given in March 2016); 106-07 at ¶ 12(b) and its encls. at 141-45 (continued posting as of May 30, 2016).

- The word "rainbow" appeared in source code (links & tags) on defendants' website for their Fayetteville, NC child care center. J.A. 128 at ¶ 5 (notice given in April 2016), 106-08 at ¶¶ 12(c),(f) and their encls. at 147, 155-70 (continued use of "rainbow" in metatags and source code for defendants' Fayetteville child care center as of May 30, 2016).

Defendants did not seek to introduce any additional evidence in their

defense regarding this first motion, nor did they ever move to supplement their response to the first motion, either prior to the district court's oral order holding defendants in contempt of court (J.A. 408) or prior to the time when the district court rendered its written opinion and judgment (J.A. 620-30). J.A. 10-16.

### D.     Second motion to hold defendants in contempt of court

Plaintiff filed a second motion, seeking to hold defendants in further contempt of court, after giving notice of continuing and new violations (J.A. 242-248) and determining that violations had not been voluntarily cured despite notice and time to cure. J.A. 219.

Plaintiff provided the court with both affidavit and documentary exhibit evidence showing the violations. J.A. 237-94, and J.A. 324-60. Defendants did file a substantive response to this second motion, but the evidence in support of that response was limited to an affidavit from defendants' director of communications. J.A. 306.

Plaintiff's evidence showed, among other things, that defendants were:

- using the forbidden web address *www.rainbowccc.com/fayetteville2*, and increasing rather than ceasing that use after notice of the violation, *see* J.A. 242 at ¶ 1 (notice of that violation), 238 at ¶¶ 6-7 (declaration testimony as to increase in use after notice), and 249-85 (examples showing defendants' increased active use of the prohibited domain as described in the declaration); and

9

- using the term "rainbow" in connection with advertisements of their services in the Fayetteville, North Carolina market, both on the website associated with their Fayetteville, North Carolina child care center (J.A. 238 at ¶¶ 6-7, 249, 285) and via email to Fayetteville residents advertising defendants' services under the "Rainbow" name, which defendants' Fayetteville, North Carolina child care center telephonically confirmed did relate to an event held at that center (J.A. 291-92, 293-94, 359-60, and 289-90 at ¶ 5).

Defendants' affiant did not specifically address, but did not deny, that the website for defendants' Fayetteville, North Carolina child care center was hosted at the prohibited web address *www.rainbowccc.com/fayetteville2*, nor that the prohibited web address was still being used to channel visitors to defendants' Rainbow Child Care Center corporate website. Defendants' affiant admitted that defendants sent marketing material for their child care services, bearing the "Rainbow" name, to customers and other individuals in the Fayetteville, North Carolina metropolitan area. J.A. 308, ¶ 12. He claimed this was "inadvertent" but described no precautions taken by defendants to prevent such violations. *Id.* He admitted that **after** the injunction was issued, defendants established a website for their Fayetteville, North Carolina child care center directly on their main corporate website, which included the word "rainbow" as part of its address (*www.rainbowccc.com*), but claimed that instances in which the term "rainbow" and rainbow images appeared on their Fayetteville child care website were—like

their mailings to the Fayetteville community—"simply an oversight." J.A. 307, ¶ 5.

### E.    Contempt judgment as to plaintiff's first and second motions

The district court held a single hearing on plaintiff's two motions to hold defendants in contempt. No further evidence was presented by either party at the hearing. J.A. 389-400. The court offered defendants an opportunity to explain why the "somewhat unbelievable number of alleged violations" (defense counsel's description, J.A. 401-02) did not justify finding that defendants had violated the injunction and should be sanctioned. (J.A. 402). The argument was, in essence, that the order "just fundamentally required [defendants] to stop doing business as Rainbow Child Care Center in Fayetteville, North Carolina" and that the specific details of the injunction were relatively unimportant. J.A. 402, lines 10-12; 403, lines 20-23; 407, lines 20-22.

The district court did not agree. At the close of the hearing, the court pronounced an oral order that defendants were in willful, knowing violation of the court's injunction, granted plaintiff's motions, and held defendants in contempt of court. Plaintiff was ordered to provide an affidavit as to the amount of its attorneys' fees. The district court also ordered that defendants could purge their contempt by complying with the written order that would follow and with the existing injunction. J.A. 408.

Plaintiff did provide an affidavit and documentary support for its attorney

fees, including an itemized statement of the time expended and evidence as to comparable rates. J.A. 410-69. Defendants argued that the amount was too high and suffered from other defects, but provided no alternative evidence. J.A. 471-480. Plaintiff provided a further verified reply from its counsel responding to those areas of its fees that defendants had questioned. J.A. 481-90.

The oral order was followed by a written order (J.A. 620-29) containing findings of fact as to the first motion (J.A. 622-24) and as to the second motion (J.A. 624), finding harm to plaintiff (J.A. 624), explaining the court's consideration of appropriate remedies and its decision in that regard (J.A. 625-28), and ultimately holding defendants in willful contempt of court, entering an award in favor of plaintiff, and offering defendants the opportunity to purge their contempt by demonstrating that they have corrected their violations of the court's order. J.A. 629. Judgment consistent with the written order was entered the same day, adjudicating that,

> plaintiff's first and second motions to hold defendant in contempt of court and enforce judgement … are GRANTED and defendant is ORDERED TO PAY $82.36 in costs, $36,080 in attorneys' fees, and $60,000 in liquidated damages to plaintiff as a compensatory penalty for its civil contempt relating to the violations of the Court's order. Defendant will remain in civil contempt of court until it has demonstrated that it has corrected its violations of the Court's injunction.

J.A. 630.

## F.    Third motion to hold defendants in contempt of court

Plaintiff filed a third motion, seeking to hold defendants in further contempt of court, after giving notice of continuing and new violations (J.A. 523-27) and determining that the violations had not been fully cured despite notice and time to cure. J.A. 491-94. Plaintiff requested damages, attorneys' fees, and the appointment of an auditor to provide monitoring of defendants' activities so that defendants could be brought into, and would remain in, full compliance with the injunction. J.A. 491-92 (audit request at ¶ 4).

Plaintiff provided the court with both sworn testimony and documentary exhibit evidence showing the violations. J.A. 514-40. The evidence included testimony as to the continuing violations, including some that had been the subject of earlier contempt motions (J.A. 516-18, ¶¶ 10-12), violations that were the subject of earlier motions and had not been cured until after the most recent notice (J.A. 518-20, ¶¶ 13-14), and dated screen shots showing violations—for example, continued display of the enjoined rainbow design to advertise defendants' Fayetteville, North Carolina child care center on defendants' GooglePlus website (J.A. 559).

Plaintiff also provided sworn testimony in the form of a declaration from Lonn Rickstrom, an information technology specialist with over thirty years' experience. Mr. Rickstrom is the manager responsible for supporting the United States Army's tactical networks across the eastern United States. He also has provided information technology support to his wife's child care business that is

13

the plaintiff in this action, for over two decades. J.A. 514, ¶¶ 2-3.

Defendants also provided testimony and arguments, including setting out objections to appointment of an auditor. *See* J.A. 560-62 as to their response to the audit request. For the most part, defendants' documents were non-substantive, reflecting arguments that plaintiff should undertake to search for defendants' violations at plaintiff's own time and expense and should not use the agreed formula set out in the parties' settlement agreement (J.A. 186-87, ¶¶ 4, 5, 7) to notify defendants of violations and seek damages for uncured violations. *See, e.g.,* the exhibits attached to defendants' response memorandum at J.A. 569-75.

By way of substantive testimony or evidence, defendants presented a second declaration from their director of communications, Morris Shapiro, and a declaration from Sam Laroche, who identified himself as defense counsel's information technology director but provided no other explanation of his role or experience.

Mr. Shapiro confirmed that many if not all of the violations reported by plaintiff did indeed exist on defendants' websites and advertising as of the date of the notice preceding the filing of the third motion for contempt. He was uncommunicative as to when any asserted cures had been effected, and made clear that he had relied on obtaining very precise information from plaintiff as to the nature of each alleged violation before curing them. J.A. 591-92, ¶¶ 4-12. For example, he confirmed that the biographies of both the director and assistant

14

director of defendants' Fayetteville, North Carolina child care center had remained posted on the corporate *www.rainbowccc.com* website until after receipt of the final notification letter from defendants, even though those biographies had previously been the subject of defendants' first and second motions for contempt, in which defendants had been found in contempt. The second of those biographies on defendants' own website was not removed until after plaintiff sent further direction concerning it. J.A. 591, ¶ 5. The same was true for source code on defendants' Fayetteville, North Carolina child care center that contained the word "rainbow." J.A. 592, ¶ 6.

      Mr. Shapiro's most recent declaration was particularly interesting in view of his prior declaration, months earlier, stating that all violations had been cured and that neither the word "rainbow" or a rainbow logo were in use in any way, either digitally or otherwise, in connection with defendants' Fayetteville Child Care Center, or in Fayetteville, North Carolina. J.A. 308, ¶ 12. Further doubt as to Mr. Shapiro's accuracy was cast by plaintiff's reply, which included a sworn declaration along with a dated screen shot showing that the rainbow imagery Mr. Shapiro most recently testified had been removed actually still remained on defendants' GooglePlus site as of the date the brief was filed. J.A. 613-14.

      Mr. Laroche testified that if the prohibited domain were eliminated, then (at least if the current structure of defendants' website were maintained), someone who typed *www.rainbowccc.com/fayetteville2* would be automatically redirected to

15

defendants' main corporate website. J.A. 597 at ¶ 9. He testified that this is

common. *Id.*, ¶ 10. Mr. Laroche testified that "if the prohibited

*rainbowccc.com/fayetteville2* cannot be active, then it must be inactive." *Id.*, ¶ 12.

He also testified that domain owners frequently maintain unused pages that resolve

to pages on the principal domain, and gave examples including CNN and the

United States Supreme Court. *Id.* The examples he provided showed that such

third-party unused pages resolved to error messages, letting users know that they

are not reaching the destination they anticipated, and in contrast to the choices

previously made by defendants, did not resolve to the home pages of those sites.

J.A. 603-05.

## G.    Hearing on third motion for contempt

The district court held a hearing on plaintiff's third motion to hold

defendants in contempt of court. The district court already was familiar with the

facts, of course, but expressed a determination to ensure that there would be "a

sound evidentiary basis" for any third order, and a determination ultimately to

enter an order that was "grounded in evidence…and temperate and measured for

the situation." J.A. 637-38. The district court listened as defendants' counsel

explained their theory that defendants have done all they reasonably can do—a

theory that Mr. Shapiro had previously expressed in response to the second motion

for contempt, but which he more recently had confirmed had not been accurate

(*compare* J.A. 308, ¶ 12 *with* the admissions in J.A. 591-92, ¶¶ 4-12). The court

16

also listened as defendants' counsel explained their new theory—not articulated in response to prior motions—that full compliance at least with the requirement to remove the prohibited website as they had agreed to do was simply impossible and would result in noncompliance with other portions of the injunction. J.A. 639-42.

## H.    District court's guidance, during hearing, as to purging contempt; defendants' expression of satisfaction with guidance

At the conclusion of the hearing, in addition to matters raised in plaintiff's third motion for contempt, defendants asked how they could purge themselves of contempt. The district court responded. Counsel for defendants—who were obviously aware at that point that at least defendants' declarations concerning removal of rainbow webpage imagery were inaccurate—stated to the district court that they understood what defendants must do, and did not seek any further direction. J.A. 646-47.

## I.    District court's interim order on third motion, requiring audit and report from auditor before reaching decision and entering judgment

Following the hearing, the district court entered an interim order on plaintiff's third contempt motion. J.A. 650-55. Rather than deciding whether defendants had further violated the injunction and granting or denying the relief sought, the district court elected to order a one-time audit to assist it in determining the nature and extent of the alleged violations of its order in view of defendants' "done all we can do" contention and alleged impossibility of compliance. The

17

district court noted that the findings would assist it not only in deciding whether the latest alleged violations were willful, but also in fashioning an appropriate remedy, if any. The district court ordered that the auditor be independent but selected by plaintiff, and ordered that the cost be borne by defendants. J.A. 654-55. The order reminded defendants that they remain in contempt until they have corrected their prior violations of the injunction, repeating the requirement of the earlier judgment (J.A. 651), without modifying it. J.A. 655.

### J.     Joint motion to amend interim order, absence of motion for other alterations in order, and district court's order granting motion to amend

On January 25, 2017, Defendants, jointly with plaintiff, moved the district court to amend its interim order. In their motion, defendants and plaintiff jointly stated to the district court that an auditor had been designated by plaintiff, and further stated that plaintiff had provided the auditor's estimate to defendants, who "would like to discuss aspects thereof before finalizing a contract" with the auditor. Defendants (jointly with plaintiff) specifically requested that the district court amend its order to provide that:

1. Plaintiff shall finalize the selection of auditor, **and Defendant shall contract with the auditor**, no later than February 7, 2017; and

2. The auditor shall provide its report to the Court no later than March 13, 2017.

J.A. 659 [emphasis added]. No other alterations to the order were requested by either party. *Id.*

Based upon the parties' joint motion, on March 30, 2017, the district court amended its initial order in the manner that defendants had sought. (J.A. 667) Defendants filed no appeal from the amended order, which was entered more than thirty days ago.

## K.    Notices of appeal filed, cases consolidated for appeal

On January 12, 2017, Defendants filed a notice of appeal from the district court's December 14, 2016 final judgment as to plaintiff's first and second motions to hold defendants in contempt. J.A. 656-57.

On January 27, 2017, while the joint motion to amend the district court's initial (December 29, 2016) interim order on plaintiff's third motion to hold defendants in contempt was pending, Defendants filed a notice of appeal from the initial order. J.A. 662-63. (As noted earlier, no appeal has been filed from the amended order.)

On January 30, 2017, this Court consolidated these appeals. J.A. 665-66.

## L.    Subsequent proceedings, to date of briefing

In the district court, defendants sought a stay of execution as to the final judgment accompanied by a supersedeas bond for that appeal. J.A. 752-56. The supersedeas bond was approved and the stay granted. J.A. 770.

Defendants also sought from the district court a stay of the December 29,

19

2016 initial interim order requiring an audit, as well as of the January 30, 2017 amended order that had been granted at defendants' request. J.A. 668-73. After full briefing from each party, the district court granted the motion, contingent upon the timely posting of a second supersedeas bond. J.A. 771-72.

After obtaining consented extensions of time, defendants timely filed the record on appeal [Dkt. #32-1 and 32-2] and their opening brief [Dkt. #31] on April 26, 2017.

# Summary of Argument

Defendants' first appeal (17-1055) seeks to overturn judgments of contempt entered against them on plaintiff's first and second motions to hold them in contempt. The final judgment entered by the district court granting each of those motions was proper, and this Court should therefore affirm the district court's order and judgment. The district court, enforcing its own order and thus entitled to substantial deference, fully considered each of the four factors required for findings of contempt (none of which were disputed in defendants' response to the first motion and only two of which were disputed in defendants' response to the second motion), made appropriate findings that are supported by evidence and are not clearly erroneous, and did not abuse its discretion in entering a finding of contempt and imposing an amount of liquidated damages to which defendants had previously consented, as a compensatory penalty for defendants' civil contempt. Neither did the court abuse its discretion in awarding to plaintiff its reasonable

attorneys' fees after evaluating and making proper findings concerning the hours expended and appropriate rates charged for the services.

In case 17-1123, defendants seek to reverse an interim order of the district court requiring that an audit of their activities be conducted before the district court makes a final determination on plaintiff's third motion to hold defendants in contempt. The audit is to assess the extent of defendants' ongoing compliance with the court's order, their claims to have done all that they can do to comply, and their claims that compliance is impossible. But the appeal is improper because appellate jurisdiction is lacking. No aspect of the order constituted a final determination as to contempt, nor did it modify or alter or amend the injunction to which the parties previously had consented or otherwise satisfy the criteria for an interlocutory appeal.

Moreover, defendants expressly joined in moving for, and consented to, an amended version of the interim order. Defendants have not appealed from that subsequent, amended interim order, which required defendants to contract with the auditor and allowed time to do so but did not otherwise change the substance of the first interim order. By requesting and consenting to the amended order and taking no appeal from it, defendants waived their right to contest the matters raised in their appeal from the initial order; and the subsequent order has rendered this appeal moot.

To the extent the Court reaches the merits of this interlocutory appeal, it

should affirm because the district court did not abuse its discretion in ordering an audit of defendants' activities to assist it in reaching a decision—particularly given the evidence from plaintiff of continuing violations of the court's order and defendants' new allegations that they have done as much as is possible to comply with the order. The district court's order requiring an audit and requiring that defendant pay for it is well within the authority of the court and is not an abuse of the court's discretion.

# Argument

## I. Judgments in civil contempt proceedings, including the rulings, sanctions, and attorneys' fees, are reviewed for abuse of discretion

Civil contempt orders are reviewed for abuse of discretion. *Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 136-37 (4th Cir. 1994) (standard applied); *JTH Tax, Inc. v H & R Block E. Tax Servs., Inc.* 359 F.3d 699, 705 (4th Cir. 2004) (confirming and applying standard); *see also Chambers v NASCO, Inc.*, 501 U.S. 32, 35 (1991) (reviewing district court's exercise of contempt powers for abuse of discretion). When, as here, "a district court's decision is based on an interpretation of its own order, [appellate] review is even more deferential because district courts are in the best position to interpret their own orders." *JTH Tax*, 359 F.3d at 705.

Attorney fee awards also are reviewed for abuse of discretion. *Colonial Williamsburg*, 38 F.3d at 138. Moreover, district courts have considerable

discretion in making their awards. *Id.*

## II. The district court properly held defendants in contempt of court as sought in plaintiff's first and second motions (case 17-1055)

### A. To establish civil contempt, four factors must be shown

Facts establishing four elements are required to support a judgment of civil contempt:

1. existence of a valid decree, of which the contemnor had actual or constructive knowledge;

2. that the decree was in the movant's "favor;"

3. that the contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of those violations; and

4. that the movant suffered harm as a result.

*JTH Tax*, 359 F.3d at 705.

Civil contempt does <u>not</u> require a finding of willfulness—an axiom first laid down by the Supreme Court and consistently followed since that time. *McComb v. Jacksonville Paper Company*, 336 U.S. 187, 191 (1949). The Court there reasoned that requiring a showing of willfulness would simply promote evasion of a court's orders by contemnors who "are not unwitting victims of the law" but instead know "full well the risk of crossing the forbidden line" and who would otherwise argue that they should be immune from contempt "because the

plan or scheme which they adopted was not specifically enjoined. *Id.* at 192-93.

The appellate court must defer to the district court's findings unless clear error is shown. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). If the district court's findings are "plausible in light of the record viewed in its entirety," reversal is improper. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*, 573-74.

## B.    Existence of a valid decree known to defendants, and that the decree was in plaintiff's favor were not, and cannot be, contested

The injunction that defendants were accused of violating was entered by the district court at the joint request of the parties (J.A. 75), and defendants' chief executive signed the consent judgment. J.A. 83. The judgment was entered in the docket and defendants did not appeal from the judgment. J.A. 10.

The decree expressly stated on its face that defendants consented to entry of judgment "as though the allegations of trademark infringement had been proved at trial." J.A. 77. The decree imposed multiple constraints on defendants as a result of their infringement, including requirements that they cease using their "Rainbow Child Care Center" business name; stop using the word "rainbow" and rainbow images in, or to promote their business in, the Fayetteville, North Carolina

metropolitan area; and cease use of the web address/domain name

*www.rainbowccc.com/fayetteville2.* J.A. 80-82. There is no question that the decree

was entered in favor of plaintiff.

### C.    Clear and convincing evidence showed defendants' awareness of their violations, and defendants have waived any right to argue otherwise

Each of the motions for contempt was preceded by transmittal from

plaintiff to defendants of letters notifying them of their violations.

- For the first motion, three separate letters were sent to, and received by,

    defendants. Each of them was addressed to defendants' in-house corporate

    counsel, which was the address defendants themselves had designated for

    the provision of notice in the settlement agreement that preceded entry of the

    consent judgment. J.A. 112, 120, 128 (letters); 118, 120, 126 (tracking

    information showing receipt), 104-05, ¶¶ 4-6, 8-10 (declaration verifying

    transmittal and evidence of receipt), 187, ¶ 7 (settlement agreement's notice

    provisions).

- For the second motion, one letter notice was transmitted to defendants, again

    to the attention of their corporate counsel as required by the parties'

    agreement, and the notice was received. J.A. 242 (letter), 248 (tracking

    information), 237-38 (declaration verifying transmittal and evidence of

    receipt).

The parties had agreed that defendants could—at least for the first two

25

violations—have at least ten days to cure any violations before motions for contempt were brought. J.A. 186. If defendants failed to cure the violations within that time, or if defendants had previously committed more than three violations within one year, then no further cure period was required and motions for contempt were agreed to be warranted. *Id.* Furthermore, the parties had agreed that notices were deemed delivered three days following transmittal. J.A. 187 (top of page). Thus—even if one ignored the fact that virtually all of the alleged violations were on websites or other locations owned and controlled by defendants (*see* Statement of the Case)—it is clear that defendants had actual or constructive knowledge of their violations.

Defendants did not contend otherwise to the district court in their pleadings. J.A. 208-09 (defendants' response to first motion), J.A. 295-304 (defendants' response to second motion).

- Defendants did not substantively respond to the first motion, merely making conclusory allegations and providing no evidence at all. J.A. 208-09.

- On the second motion, not only did defendants fail to argue to the district court that defendants lacked knowledge of the violations, but their evidence expressly acknowledged they were aware of the violations. J.A. 306-07 (declaration of defendants' director of communications admitting at ¶ 5 that he personally was responsible for placing the website of defendants' Fayetteville Child Care Center on defendants' main corporate site, admitting

26

at ¶ 6 that he and the chief executive officer of defendants had discussed the alleged website violations, and admitting at ¶ 9 that defendants had received and discussed the letter setting out the violations that gave rise to the second contempt motion).

While not directly pertinent to their knowledge, Defendants' representative did claim that certain website violations were "inadvertent" and occurred despite reliance on a contractor to remove infringements. J.A. 306-07. As discussed in the Statement of the Case, such claims of innocence have been a common theme and the district court was not required to believe them. Moreover, the law is clear that turning a blind eye to the work of one's contractors does not relieve a contemnor of responsibility; the contemnor is on at least constructive notice of the violations. *Colonial Williamsburg,* 38 F.3d at 136-37.

At the very least, there was clear and convincing evidence of defendants' knowledge of the violations at issue in each of the two motions seeking to hold them in contempt of court. In addition, defendants' failure to contest such knowledge at the district court level waived any right they might now have to claim otherwise. *Holland v. Big River Minerals Corp.,* 181 F.3d 597, 605 (4th Cir. 1999).

**D.    Clear and convincing evidence in support of each motion showed that, as to each, defendants by their conduct had violated the terms of the injunction**

**1.    Plaintiff's evidence in support of the first motion was uncontested, and clearly and convincingly showed violations of the court's order; any objections to consideration of any of it were waived**

Only plaintiff presented evidence regarding the first motion to hold defendants in contempt. Defendants' brief implying that Mr. Shapiro testified with respect to the first motion (*see, e.g.,* Br. 21, discussing what "Mr. Shapiro provided on August 23") is simply mistaken. As the docket and the record show, defendants' response to the first motion was short, and included no evidence whatsoever. J.A. 10 (docket), 208-09 (response). Plaintiff's reply memorandum noted that defendants had effectively conceded their contempt. J.A. 215-16. Defendants did not at any time move to reopen the pleadings or to file further evidence with respect to the first motion.

The district court's order accepted the uncontested evidence, which even defendants do not contest was non-existent. As discussed and referenced in Statement of the Case, Sec. B (*see also* J.A. 104-174), there was ample evidence to support not only each explicit finding of the district court but also each allegation made by plaintiff, and to show that defendants were in contempt of the court's injunction.

Defendants' only cavil is an allegation that the court should not have mentioned a blog, hosted on their main corporate website, promoting their

Fayetteville child care center. Defendants assert they had no notice of that violation until July 7, 2016. *See* Br. 23. Defendants are mistaken. That violation had been previously been addressed in plaintiff's memorandum in support of its first motion for contempt filed on May 30, 2016 (J.A. 91, top of page) and in the accompanying declaration of Lonn Rickstrom (J.A. 108-09, ¶ 12(g)), and graphically shown in the dated screenshot filed that same date (J.A. 172). The court was well within its discretion to consider that evidence, including defendants' admission (J.A. 308) that the blog post was not cured until July 11—more than a month after defendants were given notice of it by way of the first motion seeking to hold them in contempt. The court was also entitled to be skeptical of defendants' claim that they did not know of a blog posted on their own corporate website.

Moreover, defendants did not object before the district court to plaintiff's submission of that evidence, or ask the court not to consider it. Defendants did file a motion seeking to have the district court disregard certain evidence submitted in support of the plaintiff's second motion for contempt, and were aware that such motions are possible. J.A. 377. Having failed to object to admissibility of evidence that their blog was in violation of the injunction, defendants have waived their right to complain of it and cannot now complain to this Court.

### 2. The evidence presented in support of the second motion clearly and convincingly showed violations by defendants of the court's order

The evidence in support of plaintiff's second motion to hold defendants

in contempt is summarized out and discussed in Statement of the Case, Sec. D (*see also* J.A. 237-294, 324-376). Defendants did provide some evidence suggesting that the violations had been cured, but that evidence was, once again, less comprehensive than they suggest. It consisted only of a single declaration from their director of communications, Morris Shapiro.[2] Mr. Shapiro admitted defendants' noncompliance and, even where alleging to have cured the issues, admitted that the cure was long after the period allowed for remediation. *Id.* In rebuttal, plaintiff showed that many of the problems Mr. Shapiro had testified were cured still existed, and provided documentary evidence by way of dated screenshots showing their continued existence. J.A. 324, ¶ 4 – 326, ¶ 11 and 327, ¶ 16 (testimony); 330–43, 351-53 (documents). Plaintiff also showed that contrary to Mr. Shapiro's implication that search confusion had been eliminated, Google searching still brought up defendants' Fayetteville, North Carolina child care center where it ought not to have been listed. J.A. 327, ¶¶ 14-15 (testimony); 345-46 (documents). He also showed how corrections could have been, but had not been, accomplished for postings on defendants' Google site. J.A. 326, ¶ 12.

The district court's choice to credit plaintiff's testimony rather than that of defendant's representative is not grounds for reversal. Instead, the record

---

[2] References to later declarations from defendants' representative and from their attorneys' information technology director are misplaced. Those declarations were not submitted to the district court for consideration with respect to the second motion for contempt, and defendants did not at any time move the district court to have those additional documents considered in the second contempt proceeding.

provides clear and convincing evidence of defendants' violations of the district court's injunction.

We do note defendants' apparent argument (Br. 34-35) that advertising to residents of Fayetteville, North Carolina did not constitute "use" of the "Rainbow" name, or a rainbow design, word, and website in that territory. That interpretation is inconsistent with the language and structure of the injunction. It is true that the district court's order forbade defendants from <u>doing business</u> as Rainbow Child Care Center in the Fayetteville, North Carolina metropolitan area (J.A. 80, ¶ A), and from using the word "rainbow," in connection with the <u>provision</u> of child care services in the Fayetteville, North Carolina metropolitan area (J.A. 80, ¶ B), but the order did not stop there. Looking beyond the "provision" of services, the order also forbade use of any domain name containing "rainbow" in connection with the <u>offering</u> of services in the Fayetteville, North Carolina metropolitan area, (J.A. 81, ¶ C); required a new website for the Fayetteville child care center; and provided a carefully defined exception for defendants' use of its central corporate website without links to its Fayetteville facility. There would have been no need for paragraphs C and D of the order if they did not focus on the target of the offer, rather than the physical location of the service, because <u>all</u> use of "rainbow," regardless of whether in domain names or otherwise, in connection with services physically provided in the Fayetteville metropolitan area already had been addressed in the first two paragraphs of the injunction. The district court agreed,

and its interpretation of its own order was not arbitrary and is not now subject to
reversal.

### E. The district court's finding of harm is supported by clear and convincing evidence

On the first motion for contempt, the uncontested evidence showed that
defendants' contemptuous conduct resulted in search engines presenting
defendants' name and defendants' child care center to persons looking for child
care in the Fayetteville, North Carolina area in circumstances when only plaintiff's
name should have appeared, thereby gaining an advertising advantage at the
expense of plaintiff. J.A. 109, ¶ 13. (Defendants complain concerning the
credentials of plaintiff's witness, but raised no such objection before the district
court and thus waived any objection, even had it been well-grounded, which it was
not.) In addition, plaintiff received telephone calls intended to be directed to
defendants' Fayetteville child care center, evidencing confusion and wasting
plaintiff's time; and a grandparent mistakenly came to plaintiff's location, looking
for a child described as attending a "Rainbow" school. A postcard advertising a
"Rainbow" social event, sent to Fayetteville consumers who were in defendants'
database, caused confusion requiring plaintiff to clarify and explain, to those who
contacted plaintiff, that plaintiff was not the source of the email and was not
holding the advertised event. J.A. 178-79, ¶ 5; *see also* plaintiff's memorandum in
support of their motion at J.A. 96.

As to plaintiff's second motion to hold defendants in contempt, there was evidence that defendants' contemptuous conduct resulted in search engines presenting defendants' name and defendants' child care center to persons looking for child care in the Fayetteville, North Carolina area in circumstances when only plaintiff's name should have appeared, yet again gaining an advertising advantage at the expense of plaintiff. J.A. 239, ¶ 8 (declaration testimony) and J.A. 287-88 (screenshots showing the accuracy of that testimony). There also was evidence that defendants' emailed invitation to Fayetteville consumers, inviting them to a "Rainbow" summer social, caused marketplace confusion and that plaintiff received calls and had to take steps to inform consumers that plaintiff was not, in fact, holding a summer social as advertised. J.A. 289-90, ¶ 5. There also was evidence that defendants, at their Fayetteville child care center, actually held the advertised event and contributed to confusion by the way in which they described it, taking advantage of the "rainbow" advertising to their benefit and plaintiff's harm. J.A. 359-60.

In addition, as the district court correctly noted, the parties had themselves contemplated that harm could occur if the injunction was violated, and that such harm would be difficult to quantify. J.A. 186-87, ¶ 5. They noted that the contemplated harm would involve damage to plaintiff's reputation, and current and future customer relationships (*id.*)—precisely those elements discussed above. They therefore agreed that if such violations were shown, then damages **would be**

33

assessed, in an amount on which they had agreed. J.A. 186, ¶ 5. In short, the parties themselves had recognized—and agreed—that harm need not be shown with the same particularity as might otherwise be required.

Finally, we note the longstanding presumption that damages result when trademarks are infringed. The Fourth Circuit has not addressed whether the presumption of harm in trademark cases is altered in any way by the Supreme Court's decision in *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006), as defendants suggest should be the case, although in an unpublished decision it has held that the *eBay* decision is controlling—as the Supreme Court itself suggested—with respect to copyright claims. *Bethesda Softworks, LLC v Interplay Ent. Corp.*, 452 F. App'x 351 (4th Cir. 2011). Trademark cases, however, are fundamentally different because infringement cannot be found unless there is a likelihood of confusion—and confusion is inherently damaging to a company's ability to distinguish itself in the marketplace, and hence to its goodwill and other corporate assets. This Court has recognized that "a presumption of irreparable injury is generally applied" with respect to Lanham Act cases, once the plaintiff has demonstrated a likelihood of confusion. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002); *see Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 938-39 (4th Cir. 1995). Although the Fourth Circuit has never itself expressly adopted that position, district courts in this Circuit have applied that test both before *Scotts* (as recognized in *Scotts,* 315 F.3d at 273 & n.3)

34

itself, and they have continued to do so since that time, including subsequent to the

*eBay* decision. *See, e.g., Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.,*

799 F. Supp. 2d 558, 580 (M.D.N.C. 2011) ("the court will not discard the

commonly-applied presumption of irreparable harm in preliminary injunction

proceedings involving a trademark infringement claim"). Plaintiff respectfully

suggests that the district court in *Rebel Debutante* was correct and that *eBay* should

not be interpreted to remove the traditional presumption of harm arising from

trademark infringement. *eBay* dealt with the question of whether (in a patent case,

not a trademark case), an injunction should be entered at all. Here, however, an

injunction already has been entered, and its entry was not appealed. Application of

the traditional presumption of harm from continued infringement is particularly

appropriate when—as here—a party seeks to enforce an injunction previously

entered in a trademark infringement lawsuit based upon the defendants' concession

that the evidence supported a finding they had infringed and caused harm to

plaintiff as alleged in the initial complaint. *See* J.A. 77, ¶ 1.b (defendants'

admission) and 41-43 (the relief originally sought, which defendants admitted was

justified by the available evidence).

      For all of these reasons it is apparent that rather than leaving this Court

with "a definite and firm conviction that a mistake has been committed," *Anderson*

*v. City of Bessemer City*, 470 U.S. at 573, the record below as to each motion fully

supports a finding of harm to plaintiff by at least the clear and convincing standard

of evidence.

### F.    The district court did not abuse its discretion in holding defendants in contempt of court with respect to either the first or second of plaintiff's motions seeking such relief

The district court recognized the appropriate test for contempt (J.A. 621), followed that test, and found that defendants had engaged in knowing violation of the court's own injunction. The decision was supported by clear and convincing evidence—both that which the district court directly recited, and the other evidence of record. The failure to credit defendants' protestations of good-faith attempts to cure, and success in curing, their violations was not only permissible but virtually compelled, when defendants' testimony was so clearly shown to have been erroneous. Indeed, the court signaled its disdain for defendants' truthfulness by finding that their behavior not only met the requisite four elements but also was willful—a finding that that was well-supported by defendants' original disdainful conduct (including not bothering to file a proper response to the first motion for contempt), and by the demonstrably inaccurate testimony of the single witness who testified on their behalf with respect to the second motion for contempt.

In summary, defendants knew of the existence of the permanent injunction—a judgment that they themselves had sought (J.A. 75) and signed (J.A. 83). The acts in which they engaged unquestionably violated the permanent injunction, and their claim not to have intended the contemptuous acts is

insufficient and irrelevant. They knew full well the risk of crossing the forbidden line.

## III. The district court did not abuse its discretion as to the amount of damages and attorneys' fees awarded to plaintiff as part of its judgment of contempt (case 17-1055)

### A. The district court did not abuse its discretion in awarding, for each of the first two motions, $30,000 as a compensatory penalty for defendants' contempt

As the district court stated in its order (J.A. 625), and as defendants acknowledge (Br. 52), the district court has broad discretion in crafting civil contempt remedies and its decisions are not reversible except for abuse of that discretion. *Colonial Williamsburg*, 38 F.3d at 138.

Here, the court reasonably looked to the parties' settlement agreement that plaintiff had submitted in support of each motion. J.A. 181-90 (submitted as exhibit to first motion) and 229-30 (relied on in second motion as well). The settlement agreement contained a procedure to be followed for each violation of the injunction, and an amount the parties had agreed would be assessed ($30,000, without prejudice to other available remedies) as "not a penalty but a reasonable measure of damages." J.A. 186-87, ¶ 5. The settlement agreement also contained evidence of the amount paid by defendants for their initial infringements, which was $115,000. J.A. 183, ¶ 1.

Defendants provided no alternative evidence with respect to damages or

an appropriate penalty.

The district court could have awarded $30,000 for each of the multitude of violations of its injunction—an amount that would have exceeded $150,000; or it could have awarded an amount equal to the $115,000 that defendants had initially paid to settle the case. Instead, it awarded $30,000 per motion. When defendants had agreed that $30,000 would be a reasonable award for "any" violation, and that they knew this because of their "experience in the child care industry and the nature of the losses that may result from a breach of the permanent injunction," there is no reasonable basis for asserting that the district court abused its discretion in making its award.

### B.     The district court did not err in awarding to plaintiff attorneys' fees for each motion, or in the amount of those fees

Defendants have not argued that the district court erred in its decision to award attorneys' fees (which it not only had discretion to award, but which the parties' settlement agreement had contemplated would be awarded if violations were not cured within ten days following notice and plaintiff sought relief through motion to hold defendants in contempt—*see* J.A. 188, ¶ 11).

Defendants do, however, contest the amount of the fees, contending that fee entries used impermissibly vague language and that tasks were improperly "lumped." Br. 55.

Plaintiff's fee request included a detailed statement of the time expended.

J.A. 419-36. The request also included a supporting declaration from plaintiff's lead counsel. J.A. 463-69. When defendants complained, plaintiff provided a further declaration (J.A. 481-90). As to "lumping," plaintiff explained each of the three specifically questioned entries. J.A. 473-74, 482-83.

The district court carefully analyzed the fee request made by plaintiffs and ultimately awarded less than the amount requested. In reaching its decision, the court performed a lodestar analysis and evaluated the work performed. Its decision, after hearing from both sides, that plaintiff had demonstrated "with sufficient particularity that the hours requested were properly billable and appropriately performed by plaintiff's attorneys" (J.A. 628) was supported by the evidence and was not an abuse of the court's discretion.

## IV. Appeal is not well-taken from the district court's interim order with respect to plaintiff's third motion for contempt (case 17-1123)

Appellate jurisdiction is not well-founded because the appeal is interlocutory, and no statutory or judicial exception authorizes the appeal. Moreover, defendants expressly consented to an amended order that incorporates substantially the same provisions as the order that is the subject of the present appeal, thereby either waiving their right to object to the order at issue here, or rendering the appeal moot.

## A.    The appeal in case 17-1123 is not taken from a final judgment

Final judgments are of course appealable. 28 U.S.C. § 1291. The order below, however, is not a final judgment and does not comply with Fed. R. Civ. P. 58 respecting such judgments. The order merely required that an audit be performed to detect violations of the district court's order and to report whether any of the remedies requested by plaintiff cannot reasonably be complied with. J.A. 17 (minute entry 115) and 650-55 (written order). While making clear that it did not believe defendants had yet demonstrated that they had purged themselves from the contempts previously found (J.A. 655), the district court also made clear its determination to investigate defendants' new claim that compliance is simply impossible. J.A. 653 ("the court declines to make a finding [on the third motion]…until the facts have been further developed"). The district court could have entered a partial final judgment in conformity with the requirements of Fed. R. Civ. P. 54, but it chose not to do so. As a result, "the order… is subject to revision at any time before the entry of judgment…" and thus is not final. *Id.*

Contrary to defendants' suggestion (Br. 2), *Allied Towing Corp. v. Tatem*, 580 F.2d 702, 704 (4th Cir. 1978) does not in any way support finality of an order such as this and instead specifically points out that appeals from interlocutory orders are properly taken as part of the ultimate appeal from the final judgment. *Id.* The out-of-circuit cases are also factually distinct. For example, *United States v. O'Rourke*, 943 F.2d 180 (2d Cir. 1991) dealt with the appealability of what the

40

district court itself had termed a "final order of contempt." *O'Rourke* dealt with a situation comparable to that presented in defendants' first appeal (case 17-1055), where the court entered an order and judgment finding defendants in contempt of court. *O'Rourke* held that such a determination would be appealable even if the district court had ordered that sanctions would continue to mount on a daily basis (which the district court here did not do). *O'Rourke* does not apply, however, where the Court has <u>not</u> entered a final determination of contempt.

In its interim order with respect to the third contempt motion, appealed in 17-1123, the district court made clear that it has not yet reached a final determination as to whether defendants are in further contempt as alleged in that motion and whether further sanctions should be imposed as requested. J.A. 653 The district court's order simply does not meet the criteria of a "final judgment."

## B.    No exception authorizes the appeal

Defendants alternatively propose their interlocutory appeal either is authorized by 28 U.S.C. § 1292(a)(1) or is justified under the collateral order doctrine or the pendent jurisdiction doctrine. Defendants also make an unexplained suggestion that this civil contempt proceeding actually is criminal in nature and—although not expressly so stated—imply that it is for that reason immediately appealable.

### 1.  There is no statutory exception

Defendants place their reliance on 28 U.S.C. § 1292(a)(1), but that

section is not applicable because the injunction at issue was entered long before the motion now pending before the district court, was entered by consent, and was not appealed. J.A. 77-83. The district court's present interlocutory order does not modify the injunction in any way and makes clear (consistent with Fed. R. Civ. P. 54) that it is reserving any final decision as to the contempts at issue in the third motion until after it receives the auditor's report. J.A. 654-55.

Once again, the sole case on which appellants rely to support jurisdiction under Sec. 1292(a)(1)—*O'Rourke,* 943 F.2d 180—deals with the appealability of an order expressly labeled as "final" (the court is silent as to whether a judgment was entered) and akin to that in case 17-1055. *O'Rourke* does not deal with the situation posed in 17-1133, where the district court has expressly reserved its decision as to whether defendants are in further contempt as alleged in plaintiff's third motion, and has not yet made factual findings on that issue.

## 2. The collateral order doctrine does not apply

The collateral order doctrine is a narrow exception to the final judgment rule. It permits an immediate appeal under 28 U.S.C. § 1291 of an interlocutory decision if—and only if—the decision is "conclusive, resolve[s] important questions completely separate from the merits, and…would render such important questions effectively unreviewable on appeal from final judgment in the underlying action." *Digital Equip. Corp. v. Desktop Direct, Inc*., 511 U.S. 863, 867 (1994). In that case, which resolved circuit disputes, the Supreme Court cautioned

that the exception is extremely narrow and that, in general, interlocutory orders should be reviewed as part of a single appeal after final judgment has been entered. *Id.* at 867-68. Here, absolutely none of the three prongs of *Digital Equipment* are satisfied. The order below is not conclusive—by its own terms, the district court is holding off on entry of a conclusive finding until the auditor's report is returned. J.A. 654-55. The order below does not resolve important questions completely separate from the merits. *Id.* And, the interlocutory order will ultimately be reviewable on appeal from whatever final judgment is entered.

### 3. There is no proper basis for the exercise of pendent appellate jurisdiction

The concept of pendent appellate jurisdiction is one that this Court has recognized in *Scott v. Family Dollar Stores*, 733 F.3d 105 (4th Cir. 2013), and accordingly plaintiff addresses it here. Plaintiff points out, however, that the Supreme Court, in *Abney v. United States*, 431 U.S. 651, 662-63 (1977), suggested that there is no doctrine of pendent appellate jurisdiction in criminal cases, and in *Swint v. Chambers County Commission*, 514 U.S. 35, 50-51 (1995), further questioned its application in civil cases, ultimately stating that it was not then deciding "whether or when it may be proper for a court of appeals, with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appealable." *Id*. At the least, the Supreme Court is signaling that judicial doctrines expanding appellate jurisdiction should be applied in rare instances, and with considerable caution. But even if exercise of pendent

appellate jurisdiction is appropriate in some instances, case 17-1123 does not fulfill the criteria set out by this Court.

*First*, the third contempt motion is not "inextricably intertwined" with the two motions that were the subject of the contempt judgment appealed in case 17-1055. *Scott*, 733 F.3d at 111. The district court has not yet made any substantive decision on the merits of the third motion and explicitly stated that it has not yet decided whether to hold defendants in further contempt for the reasons set out in plaintiff's third motion and, if so, the degree of their culpability. Instead, the district court has ordered an audit by an independent auditor, who is to provide a report that will aid the district court in reaching its decision. J.A. 654-55. Thus, the evidence before the district court on the third motion is not, and will not be, identical to that presented with respect to the first two motions. Moreover, whether the court has authority to require an audit—which is the real thrust of the appeal in case 17-1123—is not an issue at all in case 17-1055, where no audit was requested or ordered and where the district court entered a final judgment based on the evidence presented by the parties. J.A. 620-630. Most important—and because the ultimate evidence will be different—resolution of case 17-1055 will not "necessarily resolve the appeals from both cases at once," as is required in order to find that the cases are "inextricably intertwined." *Id.*

*Second,* case 17-1123 does not present any issue whose resolution is "necessary to ensure meaningful review" of the appeal in case 17-1055. *Scott* holds

that an issue is "necessary to ensure meaningful review" only if "resolution of the appealable issue necessarily resolves the nonappealable issue or where review of the nonappealable issue is necessary to ensure meaningful review of the appealable one." *Id.* There is little effective difference between this test and the prior "inextricably intertwined" analysis, although it appears that the intent is to reverse the analysis (i.e. the first test focuses on whether resolution of the appealable case will also resolve the nonappealable case, while the second test focuses on whether the nonappealable case presents issues that could affect the outcome of the appealable case). Case 17-1055 does not meet the "necessary to ensure meaningful review" test because it stands on its own and is independently adjudicable. Nothing from case 17-1123, in which the court made no substantive findings and has not yet rendered its decision, aids that review.

### 4. This is not a criminal contempt proceeding and would not now be appealable even if it were criminal in nature

Defendants' sole explanation of their final claim to appeal as of right is that "Jurisdiction also exists as the contempt was really criminal in nature. *Nye v. United States*, 313 U.S. 33 (1941)." Br. 3. The relevance of *Nye,* and thrust of defendants' argument, is unclear. In *Nye,* there was a final judgment of contempt. The government admitted that had it been a civil matter, the notice of appeal would have been timely but argued that the appeal was criminal and that it was untimely under the applicable rules of criminal procedure. *Id.* at 41-42. The Supreme Court found that where monetary penalties were payable to the United States and not to a

private party, and where the amount was primarily punitive, the proceeding was criminal in nature, but that nonetheless, appealability was not governed by the criminal code.

Nothing in *Nye* suggests that case 17-1123, where the court has deferred reaching a decision and has yet to impose a penalty, let alone one that is punitive, is a criminal contempt proceeding. *Nye* does not suggest that **anticipated** judgments in a criminal contempt proceedings can be appealed merely because the alleged contemnor fears being held in contempt, before the case is fully tried as to contempt, a decision reached as to whether the alleged contemnor is in fact in violation, and judgment rendered.

The only decision the court has yet reached in 17-1123 is that an audit should be conducted. The audit order is not a merits decision but instead is intended to help the court ultimately reach a decision on the merits. As discussed in Argument Sec. V below, the decision to require an audit is within the authority of the court and cannot reasonably be construed as converting an otherwise civil contempt proceeding into one for criminal contempt.

## C.  Defendants' consent to an amended interim order, with provisions equivalent to those now attacked and which replaces the order now attacked, bars the present appeal from the original order

Defendants, jointly with plaintiff, moved the district court to amend the

interim order from which they presently appeal.[3] In their motion, defendants and plaintiff jointly stated to the district court that an auditor had been designated by plaintiff, and further stated that plaintiff had provided the auditor's estimate to defendants, who "would like to discuss aspects thereof before finalizing a contract" with the auditor. Defendants (jointly with plaintiff) specifically requested that the district court amend its order to provide that:

1. Plaintiff shall finalize the selection of auditor, **and Defendant shall contract with the auditor**, no later than February 7, 2017; and

2. The auditor shall provide its report to the Court no later than March 13, 2017.

No other amendment to the order was requested. J.A. 659 [emphasis added].

Based upon the parties' joint motion, on March 30, 2017, the district court amended its initial order **in the very manner that defendants had sought**. (J.A. 667)

Defendants filed no appeal from the amended order, and the time for any such filing has lapsed. Fed. R. App. P. 4(a)(1). While the pendency of a motion to amend the district court's December 29, 2016 interim order pursuant to Fed. R. Civ. P. 52(b) would have extended the deadline for appeal as to that December 29 interim order, the initial appeal did not encompass any appeal from the amended

---

[3] If the court's interim order is considered a judgment from which appeal may be taken, then this motion qualifies as a motion for amended or additional findings under Fed. R. Civ. P. 52(b).

order. Fed. R. App. P. 4(a)(4)(A)(ii), 4(a)(4)(B).

Under these circumstances, each of the following doctrines bars the present appeal:

- Judicial estoppel: The taking of positions before the district court—such as, here, agreeing to an order that included all of the same provisions to which defendants object on this appeal—is barred by the doctrine of judicial estoppel. *Guiness PLC v. Ward*, 955 F.2d 875, 899 (4th Cir. 1992).

- Mootness: Because the interim order now appealed from has been replaced by the amended interim order, from which defendants did not appeal, the present appeal is moot. *Id.* at 896. "The Constitution authorizes federal courts to hear cases and controversies, U.S. Const. art. III, § 2, and by that limitation forbids the consideration by federal courts of matters that have become moot." *Kennedy v. Block*, 784 F.2d 1220, 1222 (4th Cir. 1986).

Regardless of which doctrine is considered to govern this situation, defendants are precluded by the amended order, and by their participation in obtaining it, from pursuing their appeal in case 17-1123.

48

## V.    The district court's interim order with respect to plaintiff's third motion for contempt was not an abuse of the court's discretion and should not be reversed (case 17-1123)

### A.    Appointment of experts is authorized both by rule and under the court's inherent authority

District courts have authority to appoint experts to assist the court both pursuant to Fed. R. Evid. 706 and under the court's inherent authority, a concept that is well-discussed in Joe S. Cecil and Thomas E. Willging, *Court-Appointed Experts, in* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 527-573, Federal Judicial Center (1994). The Supreme Court certainly encourages such appointments. At the same time as it espoused the new *Daubert* standard, Justice Blackmon writing for the majority reminded that judges "should also be mindful" of the authority to appoint experts under Rule 706 of the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993). Moreover, the Advisory Committee notes to Rule 706 state that courts have great discretion in using Rule 706-appointed experts. The inherent power of a trial court to appoint an expert is "virtually unquestioned." *Scott v. Spanjer Bros., Inc.*, 298 F.2d 928 (2d Cir. 1962).

Defendants have not argued that district courts lack power to appoint expert auditors, and the district court's general authority to enter such order is thus conceded.

## B.    The district court's exercise of its authority here is appropriate and not an abuse of discretion

While the district court would have had authority to appoint an expert auditor even in different circumstances, it is worth putting this case into perspective. The history of the case included not just the pleadings, but an initial preliminary injunction (J.A. 70-74), then a consent judgment entered with explicit acknowledgment by defendants that judgment could be entered as though the allegations of the complaint had been proven at trial (J.A. 77-83, esp. J.A. 77 at ¶ 1.b-d). Since that time, Defendants already have been found in contempt in response to two separate motions, with multiple violations of the district court's injunction shown in each of those motions. In response to the first motion, defendants did not even bother filing a substantive response. *See* Argument Sec. II.D.1 above. In response to the second motion, defendants' officer claimed that defendants had cured all their violations, but his testimony was demonstrably incorrect. *See* Argument Sec. II.D.2 above.

Now, in response to plaintiff's third motion, defendants rely on testimony from their same officer who previously was shown to have been wrong, and who now admits that violations had continued beyond the time when he first claimed all violations were cured, but who once again claims all violations have ceased. *See* Statement of the Case at Secs. D, F. Defendants also for the first time argue impossibility of compliance. And, defendants continue a refrain that plaintiff is subverting the compliance process by not conducting searches at plaintiff's own

50

expense and letting defendant know the results, so defendants can fix that which plaintiff discovers without recompense to plaintiff.

Defendants are incorrect in stating (Br.50) that the district court found plaintiff's evidence insufficient to hold defendants in contempt of court on the third motion. What the district court said, instead, was that it was not convinced as to the **willfulness** of defendants' conduct. The court simply made no finding as to the violations themselves, although it acknowledged that the parties had set out competing positions. J.A. 653.

Willfulness is not a required finding for civil contempt. *See* Argument Sec. II.A. The fact that the district court mentioned willfulness is consistent, however, with the court's statement that it "takes seriously" defendants' claims of "good faith efforts" to comply. J.A. 653. Indeed, defendants take the position that once they asserted a defense of substantial compliance, then the court was <u>required</u> to make findings as to whether that claim was correct. *See* Br. 44.

Given a history of inaccurate claims that defendants were in full compliance with the court's order, it is unsurprising that the district court declined to find compliance based on the testimony of the very witness who had not been accurate in the past, and was disinclined to rely on defendants to investigate themselves. But, given defendants' claims that they are being unfairly targeted by plaintiff, have done all that they can do, and cannot in fact comply any more than they already are complying, the district court reasonably determined to exercise its

authority to require an independent audit of defendants' claims and activities.

If defendants have indeed done that which they represented to the court they have done, then they should have nothing to fear. If on the other hand they have again misrepresented the facts and their activities, the outcome is unlikely to be so sanguine. Either way, the district court has chosen what it believes to be the best way to get to the truth in a difficult situation involving claims of technological impossibility. It has the discretion to do so, and its order was not an abuse of that discretion.

### C.    Defendants have not preserved any objection to the imposition of the cost of audit, but the court's order regarding the cost of audit is not erroneous in any event

In order to preserve an issue on appeal, it must be addressed in the party's opening brief, in more than a conclusory manner. *Erline Co.v. Johnson*, 448 F.3d 648, 653 n.7 (4th Cir. 2006); Fed. R. App. P. 28(a)(9)(A). Defendants indicated an objection to the cost of the audit and/or the requirement that they bear that cost in several headings (Br. 50, Sec. I.E heading, and at 52, Sec. II heading). However, the only argument as to cost allocation is at the bottom of page 52 and top of page 53, in which defendants merely reiterate their objection without providing any substantive argument.

Perhaps defendants' statement that the settlement agreement did not provide for an audit (Br. 53) was intended to be an argument, but the appendix section to

which it refers is the order on the second contempt motion, which did not include an audit requirement. In any event, while it certainly is true that the settlement agreement did not provide for an audit, the agreement did expressly contemplate that other remedies could be sought and obtained. (J.A. 186, last line).

The settlement agreement, however, is not particularly relevant to issues surrounding the court-ordered audit because the audit is not a final remedy, but an interim measure to assist the court. The district court not only has the authority to order the use of outside experts, but also has the authority to allocate the cost of such experts. Fed. R. Evid. 706(c); *see also* discussion on inherent authority, *supra*. The district court's interim decision to require that defendants bear that cost is one that it had the authority to make, and it did not abuse that authority here by requiring that the cost be borne by the party whose protestations of inability to comply and of substantial compliance, in the face of evidence of noncompliance, required the additional investigation.

## VI.    If relevant at all, defendants' suggestion that they have not been offered a chance to purge themselves from contempt is wrong; they were told how to purge their contempt, said they understood, and then failed either to take the requisite steps or to move the district court for relief

The only order or judgment of the district court that has, to date, found defendants in contempt of court is the order and final judgment rendered on plaintiff's first two motions for contempt. J.A. 629 (conclusion of order), 630

53

(judgment). Although the order provided sanctions for the clearly demonstrated past violations of the court's order, it did not impose ongoing sanctions, such as a daily fine until defendants brought themselves into compliance. *Id.* In any event, the judgment specifically provided that defendants could purge themselves of contempt by demonstrating that they had corrected their violations of the district court's injunction. *Id.*

Defendants sought oral guidance from the court as to how to purge their contempt from the prior order, during the hearing on the third motion for contempt. At the hearing, defendants expressed themselves satisfied with that guidance. J.A. 646-47. The district court did not, in its subsequent interim order, modify the prior judgment, set new standards for the purge requirement, or place new barriers in the way of defendants' ability to demonstrate that they had purged themselves of their previously-found violations. J.A. 654-55.

But defendants have made no motion to purge themselves of the prior orders of contempt, despite acknowledging they know what they must do to purge themselves of contempt. *See* docket, J.A. 17-21 (absence of motion), 644-47 (transcript recording discussion and acknowledgment).

Defendants' failure to make any attempt to effectuate the purge authorized by the district court effectively waives their right to make any argument concerning purging before this Court, and certainly provides no factual basis for any argument that the district court has abused its discretion by failing to *sua*

54

*sponte* find that defendants have purged themselves from contempt.

For the foregoing reasons, defendants' "purge" argument is both irrelevant to case 17-1123 (in which contempt has not yet been found), and unfounded not only with respect to case 17-1123 but also with respect to case 17-1005, if intended to be raised with respect to that case.

## VII.  Appropriate relief on this appeal

### A.  Case 17-1055 should be affirmed and remanded for determination of further attorneys' fee award

Just as attorneys' fees were authorized for the contempt proceedings before the district court, so too are they authorized for proceedings before this Court. Both the courts' inherent authority to enforce judicial orders, discussed above, and the parties' Settlement Agreement (J.A. 188, ¶ 11), justify and authorize such fee-shifting. *Colonial Williamsburg*, 38 F.3d 133; J.A. 188, ¶ 11. Plaintiff respectfully requests that case 17-1055 be affirmed, and that the matter be remanded to the district court for determination as to the amount of appellate fees, costs and other expenses.

### B.  Case 17-1123 should be dismissed or affirmed, and remanded in either event

Case 17-1123 was an interlocutory appeal and the motion for contempt is as yet undecided. An award of fees on any basis other than appellate frivolity would be premature. Although plaintiff respectfully suggests the appeal was

frivolous in view of the grounds for dismissal discussed above and recognizes the Court could so find *sua sponte*, briefing attorneys' fee motions at this point would be wasteful and duplicative when further proceedings are required below. Plaintiff respectfully requests that case 17-1123 be dismissed or affirmed, and remanded to the district court for further proceedings.

# Conclusion

As set out hereinabove, plaintiff respectfully suggests that case 17-1123 should be dismissed for lack of appellate jurisdiction. Additionally, and for the further reasons set out above, the appealed from judgment and orders of the district court should be affirmed, and the cases remanded for further proceedings before the district court including an award of further attorneys' fees, costs, and expenses in case 17-1055.

Respectfully submitted this the 7th day of June, 2017.

/s/  Susan Freya Olive
Susan Freya Olive
  N.C. State Bar No. 7252
David L. McKenzie
  N.C. State Bar No. 36376

**Olive & Olive, P.A.**
Attorneys for Plaintiff
P.O. Box 2049
Durham, NC  27702
Telephone:  (919) 683-5514
Facsimile:  (919) 688-3781
emailboxednc@oliveandolive.com

# Certificate of Compliance

I certify that this brief complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-volume limitations of Rule 32(a)(7)(B). The brief was prepared using **Microsoft Word** and the text of the brief is in **14-point Times New Roman font.** Excluding the parts of the brief described in Rule 32(f), namely cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, and attachments, the brief contains **12,934** words, as counted by Microsoft Word.

/s/  Susan Freya Olive
Susan Freya Olive

# Certificate of Service

The undersigned certifies that the foregoing document together with any and all attachments was served through the CM/ECF system on counsel of record for Defendants-Appellants:

Jaye E. Bingham-Hinch <jeb@cshlaw.com>
David G. Williams <dwilliams@cshlaw.com>
Pankaj K. Shere <sphere@cshlaw.com>

on this the 7th day of June, 2017.

/s/  Susan Freya Olive
Susan Freya Olive
   N.C. State Bar No. 7252
David L. McKenzie
   N.C. State Bar No. 36376

**Olive & Olive, P.A.**
Attorneys for Plaintiff
P.O. Box 2049
Durham, NC  27702
Telephone:  (919) 683-5514
Facsimile:  (919) 688-3781
emailboxednc@oliveandolive.com